T.C. Memo. 1999-75

UNITED STATES TAX COURT

EDUCATION ATHLETIC ASSOCIATION, INC., Petitioner
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6396-98X.                    Filed March 10, 1999.

E is an entity exempt from Federal income tax under sec. 501(a), I.R.C., as an organization described in sec. 501(c)(3), I.R.C.  E's exempt activity involves primarily the promoting of athletic education.  On its Form 1023, Application for Recognition of Exemption, E checked sec. 509(a)(2), I.R.C., as the reason it was not a private foundation.  E's sole source of income for the 1993, 1994, and 1995 years was from the sale of pickle cards, a game of chance authorized by Nebraska statute.  E paid and reported unrelated business income tax for 1993.  When E transmitted its Forms 990-T, Exempt Organization Business Income Tax Return, for the years 1993, 1994, and 1995, E enclosed a check and attached a letter stating that the check was being delivered as an offer in settlement of R's audit of E's 1993 taxable year.  R cashed the check. Subsequently, R determined that E did not meet the exception requirements of sec. 509(a)(2), I.R.C., and  was therefore a private foundation.

1.  Held: the sale of pickle cards is an unrelated trade or business and income generated therefrom constitutes unrelated business taxable income to E.  See secs. 512(a), 513(a), I.R.C.; Secs. 1.513-1(a) through (d), Income Tax. Regs.

2. <u>Held</u>, <u>further</u>, respondent's determination that petitioner is not a publicly supported organization described in sec. 509(a)(2), I.R.C., and is therefore a private foundation, is sustained.

3. <u>Held</u>, <u>further</u>, respondent's cashing of petitioner's check submitted with a letter purportedly offering to compromise petitioner's unrelated business income tax liability for 1993 does not constitute a valid offer in compromise. See sec. 7122, I.R.C.; <u>Botany Worsted Mills v. United States</u>, 278 U.S. 282, 288-289 (1929); sec. 301.7122-1(d), Proced. & Admin. Regs.

<u>Truman Clare</u>, for petitioner.

<u>William I. Miller</u>, for respondent.

MEMORANDUM OPINION

NIMS, <u>Judge</u>: Respondent determined that petitioner qualified for exemption from Federal income tax under section 501(a) as an organization described in section 501(c)(3). Respondent further determined that petitioner does not qualify for the exception from private foundation categorization contained in section 509(a)(2). Petitioner challenges respondent's determination by invoking the jurisdiction of this Court for a declaratory judgment pursuant to section 7428.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

This case was submitted on the stipulated record pursuant to Rule 122. The evidentiary facts and representations contained in the administrative record are assumed to be true. See Rule 217(b)(1).

## Background

At the time the petition was filed, petitioner's principal office was located in Omaha, Nebraska. Petitioner was organized and incorporated on January 18, 1971, under Nebraska law as a nonprofit organization primarily to promote athletic education.

On its Form 1023, Application for Recognition of Exemption, petitioner checked section 509(a)(2) as the reason it was not a private foundation.

On August 22, 1984, the District Director issued a favorable determination letter stating that petitioner was an organization exempt from Federal income taxation under section 501(c)(3). The letter also stated that petitioner was reasonably expected to be a publicly supported organization under sections 509(a)(1) and 170(b)(1)(A)(vi). The ruling stated that petitioner would be treated as a nonprivate foundation during an advance ruling period ending December 31, 1989.

Petitioner's sole source of support for its 1993, 1994, and 1995 years was income from the sale of pickle cards to liquor establishments in Nebraska. Pickle cards are a game of chance authorized by Nebraska statute. See Neb. Rev. Stat. secs. 9-301 through 9-356 (1997 & Supp. 1997). Certain section 501(c)(3),

(4), (5), (7), (8), (10) or (19) organizations may apply for a license to conduct a lottery by the sale of pickle cards. Id. at sec. 9-326 (1997).

A licensed manufacturer of pickle cards sells or supplies the pickle cards to licensed distributors, who then sell them to licensed organizations. Id. at secs. 9-307 (1997), 9-313 (1997), 9-331 (Supp. 1997), 9-332 (Supp. 1997), 9-340 (1997). Only licensed organizations may sell the pickle cards to licensed pickle card operators. The pickle cards may be sold to the public only (1) by licensed organizations or (2) by licensed pickle card operators. See Neb. Rev. Stat. secs. 9-328 (1997), 9-329.02 (Supp. 1997), 9-329.03 (Supp. 1997), 9-340.02 (1997), 9-345.01 (1997). Petitioner was a licensed organization under Nebraska law.

On September 27, 1996, petitioner submitted to respondent Forms 990-T, Exempt Organization Business Income Tax Return, for the years 1993, 1994, and 1995. Petitioner reported its income from the sale of pickle cards as unrelated business taxable income (UBTI). Petitioner's gross receipts from its pickle card sales for 1993, 1994, and 1995 were $70,251, $57,944, and $26,675, respectively. Petitioner reported and paid unrelated business income tax (UBIT) in the amount of $3,825 for 1993. Petitioner further reported that it did not have UBIT liability for 1994 and 1995.

When it transmitted its Forms 990-T for 1993, 1994, and 1995 and paid the tax liability for 1993, petitioner attached a letter stating in pertinent part:

> Enclosed is [a] check * * * in the amount of $573.75 for payment in full of all assessed taxes and penalties for calendar year 1993. It is my understanding that there were no taxes or penalties for 1994 and 1995. This check is being delivered to you as an offer in settlement in connection with the above-referenced tax audit and dispute. It is a condition precedent for the delivery of this check to the Internal Revenue Service that it agree to the above.

After receiving the Forms 990-T for 1993, 1994, and 1995, respondent cashed the check but did not propose additional taxes and did not issue a notice of deficiency.

On January 28, 1998, respondent made a determination that petitioner was a private foundation under section 509(a), effective January 1, 1993. However, petitioner's section 501(c)(3) status remained undisturbed.

## Discussion

The sole issue for decision is whether respondent correctly determined that petitioner, an exempt organization under section 501(c)(3), is not a publicly supported organization described in section 509(a)(2) and therefore is a private foundation. Although the case was submitted on the stipulated record pursuant to Rule 122, petitioner bears the burden of proof as to whether it is a publicly supported organization as described in section 509(a)(2). See Rule 217(c)(2)(A).

Section 509 provides in pertinent part:

(a) General Rule.--For purposes of this title, the term "private foundation" means a domestic * * * organization described in section 501(c)(3) other than--

  *    *    *    *    *    *    *

(2) an organization which--

(A) normally receives more than one-third of its support in each taxable year from any combination of--

(i) gifts, grants, contributions, or membership fees, and

(ii) gross receipts from admissions, sales of merchandise, performance of services, or furnishing of facilities, in an activity which is not an unrelated trade or business (within the meaning of section 513) * * *

(B) normally receives not more than one-third of its support in each taxable year from the sum of--

(i) gross investment income * * * and

(ii) the excess (if any) of the amount of the unrelated business taxable income (as defined in section 512) over the amount of the tax imposed by section 511.

Respondent contends that petitioner is not a publicly supported organization pursuant to section 509(a)(2) because it received all of its support from pickle card sales which is an unrelated trade or business; petitioner must therefore be characterized as a private foundation.  Thus, our determination hinges upon whether the pickle card sales constitute an unrelated trade or business.

Section 511(a) imposes a tax on the unrelated business taxable income of certain tax-exempt organizations, including section 501(c)(3) organizations.  Section 512(a)(1) defines "unrelated business taxable income" as gross income derived by any organization from any unrelated trade or business, regularly carried on by it, less allowable deductions.

Section 513(a) defines the term "unrelated trade or business" as,

> in the case of any organization subject to the tax imposed by section 511, any trade or business the conduct of which is not substantially related (<u>aside from the need of such organization for income or funds or the use it makes of the profits derived</u>) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501 * * *  [Emphasis added.]

Section 513(a)(1) through (3) contains exceptions to the above general rule, but none of the exceptions are applicable in this case.  Therefore, income generated from the pickle card sales must be considered UBTI if:

> (1) it is income from trade or business, (2) such trade or business is regularly carried on by the organization, and (3) the conduct of such trade or business is not substantially related (<u>other than through the production of funds</u>) to the organization's performance of its exempt functions.  [Sec. 1.513-1(a), Income Tax Regs.; emphasis added.]

For purposes of section 513, the term "trade or business" has "the same meaning it has in section 162, and generally includes any activity carried on for the production of income from the sale of goods or performance of services."  Sec. 1.513-1(b), Income Tax Regs.  The term "trade or business" is not

precisely defined in the Internal Revenue Code or the regulations promulgated thereunder; however, it is well established that in order for an activity to be considered a taxpayer's trade or business for purposes of section 162, the activity must be conducted "with continuity and regularity" and "the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35, (1987). When a corporate taxpayer is involved, "the determinative factor in resolving the trade or business issue is whether the activity was engaged in with the intent to earn a profit." Professional Ins. Agents v. Commissioner, 78 T.C. 246, 262 (1982).

In this case, petitioner's sole source of income was derived from the sale of pickle cards. Petitioner needed to make a profit from the pickle card sales in order to fund operations. Furthermore, petitioner's gross receipts from its pickle card sales for 1993, 1994, and 1995 were $70,251, $57,944, and $26,675, respectively. To produce these revenues, petitioner must have conducted the pickle card sales with continuity and regularity. Therefore, we hold that petitioner was engaged in a trade or business of selling pickle cards and regularly carried on such sales.

Petitioner argues that its sale of pickle cards is not an unrelated trade or business because, under Nebraska law, only exempt organizations may sell pickle cards, and therefore petitioner does not compete with for-profit entities.

Petitioner's line of reasoning has been rejected in an analogous situation by the United States Court of Appeals for the Eighth Circuit, the Court of Appeals to which this case would normally be appealable.  In <u>Clarence LaBelle Post No. 217, VFW v. United States</u>, 580 F.2d 270, 271 (8th Cir. 1978), the taxpayer, a section 501(c)(4) organization, argued that income from an unrelated trade or business may be taxed under section 511(a) only if the trade or business competes with a taxpaying entity.  Since the taxpayer's bingo operation did not compete with taxpaying entities, the taxpayer argued that it was not subject to tax.  <u>Id.</u>  After examining the legislative history of section 513 and the regulations thereunder, the Court of Appeals held that the tax on unrelated business income is not limited to income earned by a trade or business whose operations compete with taxpaying entities.  <u>Id.</u> at 274; accord <u>Louisiana Credit Union League v. United States</u>, 693 F.2d 525, 541-542 (5th Cir. 1982) ("The regulations under section 513 bolster our conclusion that competition is not essential to the taxability of unrelated business income.").  See also <u>Smith-Dodd Businessman's Association, Inc. v. Commissioner</u>, 65 T.C. 620, 624 (1975), where we stated that "unfair competition plays a relatively insignificant role in the application of the amended unrelated business tax".

Although section 513(f) legislatively overrides the decision in <u>Clarence LaBelle Post No. 217, VFW v. United States</u>, <u>supra</u>, by creating a special exemption for bingo games from the definition

of "unrelated trade or business", we have recognized that the reasoning of that case remains sound.  See <u>Julius M. Israel Lodge of B'nai B'rith No. 2113 v. Commissioner</u>, T.C. Memo. 1995-439 n.6, affd. 98 F.3d 190 (5th Cir. 1996).  Therefore, the fact that petitioner did not compete with for-profit entities with respect to pickle card sales is not controlling.

Section 1.513-1(d)(2), Income Tax Regs., provides in part that a trade or business is "related" to an exempt purpose "only where the conduct of the business activities has causal relationship to the achievement of exempt purposes (other than through the production of income); and it is 'substantially related,' * * * only if the causal relationship is a substantial one."  To be considered "substantially related" to exempt purposes, the regulations require that income generated by the trade or business must "contribute importantly" to the achievement of the exempt purpose.  <u>Id.</u>  This determination depends "upon the facts and circumstances involved."  <u>Id.</u>

In this case, pickle card sales did not contribute in the manner contemplated by section 513 and the regulations thereunder.  Petitioner argues that since all proceeds from the sales were used to further petitioner's exempt activities, the income from pickle card sales is not UBTI.  Petitioner's argument ignores the plain language of section 513(a) and the regulations thereunder, which, it bears repeating, provide that mere production of income to fund an exempt organization's activities is insufficient to establish a substantial causal

relationship between the trade or business and the exempt activity.  It follows that income generated from pickle card sales was derived from an unrelated trade or business.

Accordingly, pickle card sales income is UBTI for purposes of section 512(a).  Since all of petitioner's gross receipts were derived from pickle card sales and the sale of pickle cards constitute UBTI to petitioner, we sustain respondent's determination that petitioner is not a publicly supported organization described in section 509(a)(2), and is therefore a private foundation.

We note petitioner's assertion that respondent accepted a purported offer in compromise, in response to which respondent allegedly agreed that the pickle card sales were not unrelated business income (UBI) and is therefore barred from asserting that the pickle card sales were UBTI.  A fair reading of the contents of the letter attached to petitioner's check leads us to conclude that the letter merely constituted a settlement offer to resolve the dispute resulting from the IRS audit of petitioner's 1993, 1994, and 1995 years.  In any event, petitioner's so-called offer in compromise does not comply with the specific requirements of section 7122 and the regulations thereunder, and must also fail for that reason.  See Botany Worsted Mills v. United States, 278 U.S. 282, 288-289 (1929).

All contentions not addressed are either not germane or unpersuasive.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.