P.L.L. SCHOLARSHIP FUND, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 29579–82X.     Filed January 26, 1984.

*James R. Monroe*, for the petitioner.
*Genelle F. Forsberg*, for the respondent.

OPINION

PATE, *Special Trial Judge*: The petitioner has, pursuant to section 7428,[1] invoked the jurisdiction of this Court to determine whether it is exempt from Federal income tax under section 501(c)(3). The statutory requirements for this Court's declaratory judgment jurisdiction have been satisfied. The question presented is whether the petitioner is operated exclusively for charitable purposes within the meaning of section 501(c)(3).

This case was submitted on a stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice

---

[4]For another way to lose at bingo, see *P.L.L. Scholarship Fund v. Commissioner*, 82 T.C. 196 (1984).

[1]All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise indicated.

and Procedure. The stipulated record, which is assumed to be true for the purposes of this proceeding, is incorporated herein by reference.

Petitioner P.L.L. Scholarship Fund was incorporated as a nonprofit corporation under Iowa statutes on July 13, 1981. The articles of incorporation state that:

The Corporation is formed exclusively for the purpose of raising monies to be used for providing college scholarships. These monies shall be raised primarily from the operation of bingo games on the premises of the Pastime Lounge, Ltd., 116 Broadway, Eagle Grove, Iowa 50533, but it shall be permitted to use any other fund raising methods * * *

Profits from the bingo games or any other fundraising activities are to be distributed to the following organizations:

A. The board of the Eagle Grove, Iowa Community School District for scholarships to be granted at their discretion to graduates of Eagle Grove Community High School.
B. The scholarship funds of any state or municipal university in the State of Iowa.
C. The scholarship funds of any private college or university in the State of Iowa that is qualified under section 501(c)(3) of the Internal Revenue Code.

Allocation to each of the various beneficiaries is at the discretion of the board of directors of the petitioner.

Petitioner's board of directors is comprised of five members. The initial directors, named in the articles of incorporation, are Paul A. Walker and Helen N. Walker, each owners of the Pastime Lounge; Charles A. Walker, accountant and director of the Pastime Lounge, and two other persons, each described as a "bingo player." Subsequent directors are appointed by the board of directors of the Pastime Lounge.

The Pastime Lounge is an enterprise for profit, selling food, pop, beer, liquor, etc. The bingo games are conducted on a regular basis on the premises of the Pastime Lounge during the same time that it conducts its regular business activity. Paul and Helen Walker, owners of the Pastime Lounge, conduct the bingo games. The only expenses paid from the amounts collected for participation in the bingo games are those directly related to the operation of the bingo games, such as prizes, the purchase of supplies, accounting fees, etc. Sales of food and beverages are solicited and made to the bingo players by employees of the Pastime Lounge. Proceeds from

such sales are retained by the Pastime Lounge separate and distinct from the proceeds of the bingo games.

On or about July 15, 1981, petitioner filed an Application for Recognition of Exemption, Form 1023, with respondent. On September 23, 1982, respondent issued a final adverse determination letter denying petitioner's application for exempt status on the basis that:

The primary activity of the P.L.L. Scholarship Fund is not in furtherance of an exempt purpose as required by section 501(c)(3), Internal Revenue Code of 1954, and the Regulations pertaining thereto.

Petitioner, having exhausted its administrative remedies within the meaning of section 7428, petitioned this Court to determine its status under section 501(c)(3). Respondent, in an amendment to his answer, maintained, alternatively, that petitioner is a "feeder" organization pursuant to the provisions of section 502(a).

Petitioner has applied for exemption from Federal income taxation under sections 501(a) and 501(c)(3). Generally, an organization qualifies for such exemption if it meets a three-part test: (1) It must be both "organized" and "operated" exclusively for exempt purposes; (2) no part of its net earnings may inure to the benefit of any private shareholder or other individual; and (3) no substantial part of its activities may be political or lobbying activities.[2] Section 501(a) and (c); *Greater United Navajo Enterprises v. Commissioner*, 74 T.C. 69, 76 (1980), affd. 672 F.2d 922 (9th Cir. 1981).

The first prong of the test is amplified in the regulations which make it clear that if the organization fails to meet either the organizational test or the operational test, it is not

---

[2]SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) * * * shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

* * * * * * *

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

(3) Corporations * * * organized and operated exclusively for * * * charitable * * * or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

exempt.[3] Sec. 1.501(c)(3)–1(a), Income Tax Regs.

As to the operational test, section 1.501(c)(3)–1(c)(1), Income Tax Regs., provides:

An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). *An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.* [Emphasis supplied.]

We must consider whether there is present here a disqualifying nonexempt activity that is "substantial in nature." *Better Business Bureau v. United States*, 326 U.S. 279, 283 (1945); *Copyright Clearance Center v. Commissioner*, 79 T.C. 793, 804 (1982); *Presbyterian & Reformed Pub. Co. v. Commissioner*, 79 T.C. 1070, 1082 (1982), on appeal (3d Cir., July 6, 1983). After careful consideration of the entire record, this Court finds that the petitioner has not carried its burden of showing that it was operated exclusively for an exempt purpose under the required standards.

Petitioner's articles of incorporation provide that it may operate bingo games and that such games will be operated on the premises of the Pastime Lounge. The operation of regularly scheduled bingo games constitutes the operation of a trade or business, unrelated to an exempt purpose. *Help The Children, Inc. v. Commissioner*, 28 T.C. 1128 (1957); see *Smith-Dodd Businessman's Assn., Inc. v. Commissioner*, 65 T.C. 620 (1975).

Furthermore, the administrative record in this case discloses that, operationally, petitioner engaged in no exempt activities, that it only operated bingo games, and that such bingo games were regularly scheduled and always held on the premises of a commercial establishment, the Pastime Lounge. The bingo games were conducted by the owners of the lounge who allowed the bingo players to be solicited by the employees of the Pastime Lounge to promote its sales of food, pop, beer, and liquor.

From these facts, it appears that more than an insubstantial purpose of the petitioner's activities was to attract persons, by the way of the bingo games, onto the premises of the Pastime

[3]Since our decision in this case rests upon the operational test, discussion of the organizational test has been omitted from this opinion.

Lounge expecting that they would purchase food and beverages while participating in the games. In fact, it appears that petitioner's activities were, in substantial part, designed to enhance the profitability of the Pastime Lounge.

To ensure this result, petitioner's articles of incorporation named as the initial board of directors five persons, three of whom were owners or directors of the Pastime Lounge. Subsequent directors were to be appointed by the board of directors of the Pastime Lounge. Therefore, the board of directors of petitioner was and always would be controlled by the directors of the Pastime Lounge. Consequently, all of petitioner's fundraising activities could be controlled by the owners of the Pastime Lounge to provide them with maximum benefit.

Petitioner would have us view its operations as being separate and apart from the operations of the Pastime Lounge because the receipts from the bingo games and the receipts from food and beverage sales were accounted for separately. It asserts that because no cash payments were made by the petitioner to the Pastime Lounge or its employees for either rent or wages, that all of petitioner's activities were for an exempt purpose. A realistic look at the operations of these two entities, however, shows that the activities of petitioner and the Pastime Lounge were so interrelated as to be functionally inseparable. Separate accountings of receipts and disbursements does not change that fact.

The privilege of tax-exempt status has been accorded by Congress to organizations dedicated to the public good. As stated in section 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs:

An organization is not organized or operated exclusively for one or more of the [exempt] purposes * * * unless it serves a public rather than a private interest. Thus, to meet the requirement of this subdivision, it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests * * *

Since the record in this case does not show that the petitioner was operated exclusively for exempt purposes, but rather indicates that it benefited private interests, exemption was properly denied.[4]

*Decision will be entered for the respondent.*

---

[4]Because petitioner has not met the qualifications required by secs. 501(a) and 501(c)(3), to be classified as an exempt organization, this Court does not reach the question nor does it decide

---

whether the petitioner is a "feeder" organization under sec. 502(a). Cf. *Piety v. Commissioner,* 82 T.C. 193 (1984).

Similarly, under this holding, petitioner's arguments under the unrelated business income provisions of secs. 511 through 513 are not applicable inasmuch as these sections apply only to organizations exempt under sec. 501(a). Sec. 511(a); see *Clarence LaBelle Post No. 217 v. United States,* 580 F.2d 270 (8th Cir. 1978); *Suffolk County Patrolmen's Assn. v. Commissioner,* 77 T.C. 1314 (1981); *Smith-Dodd Businessman's Assn., Inc. v. Commissioner,* 65 T.C. 620 (1975). See also sec. 1.501(c)(3)–1(e), Income Tax Regs., and sec. 1.511–2(a), Income Tax Regs.